UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:15 CR 553 JAR |
| | ) | |
| v. | ) | |
| | ) | |
| KYLE MAURICE PARKS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S' MOTION TO SUPPRESS EVIDENCE

Comes now, Joseph M. Hogan, Counsel for the Defendant and pursuant to Rule 12 (b)(3) of the Federal Rules of Criminal Procedure, and hereby moves this Court to suppress as evidence all the evidence seized relevant to the search of a van on December 4, 2015, located on a parking lot, in that the original search of the van was conducted without a warrant and in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and a subsequent search, pursuant to a search warrant regarding cell phones, was also in violation of the Fourth and Fourteenth Amendments to the United States Constitution in that the search warrant was for evidence that had already been illegally obtained without a search warrant.  The grounds for the Defendant's motion are as follows:

FACTS OF THE CASE

1.  On December 2, 2015, a law enforcement officer was advised that a female, "TS," had fled on foot from a case worker returning her to a group home. "TS" had previously been a victim of human trafficking and was considered a high risk missing person in Ohio.

2.  On December 3, 2015, the law enforcement officer learned from TS's mother that TS had called her and told her she was heading to Texas and then to Florida with two of her friends, Lashanna and Kayden.

3.  The law enforcement officer requested an emergency phone ping, and the location showed the phone located in St. Charles, Missouri.

4.  The law enforcement officer in Ohio then contacted St. Charles police department and had a St. Charles officer drive through the parking lot of the location of the ping to see if any vehicles from Ohio, and learned one of two vehicles in the lot from Ohio was registered to defendant, whom the Ohio law enforcement was familiar with in connection with an investigation.

5.  At approximately 9:10 p.m., the local officer advised he had made contact with several females from Columbus, Ohio, one of whom was TS and that the females stated defendant transported them from Columbus, Ohio and they were headed to Texas and Florida.

6.  The females were transported to a locked juvenile facility in St. Charles, Mo., where they remained on December 4, 2015.

7.  Two of the women were located in one hotel room and informed the St. Charles officer that they were strippers, but not prostitutes.

8.  The officer reports the women stated they believed the other three girls were prostituting.

9.  Two other local officers located the other three women, one of whom was the juvenile TS.

10. Searches of the hotel rooms revealed condoms, pre-paid credit cards, and notebooks.

11. On December 4, 2015, defendant responded to the St. Charles City Police Department inquiring about the women at which time he was arrested.

12. Police responded to the parking lot, where defendant's blue Dodge Caravan was located with another woman seated in the van.

13. Police state that the women had previously stated that defendant gave them weed and heroin during the trip, though no narcotics or paraphanalia were found.

14. A canine sniff was conducted on the vehicle and the canine gave a positive indication for narcotics inside the vehicle.

15. Notably, there were no narcotics in the vehicle.

16. Four cell phones were seized from the vehicle and a search warrant was later applied for and executed on the phones.

17. Despite the fact that defendant was in custody, consent to search the vehicle was never requested by any of the police officers at the police department.

18. Despite the fact that defendant was in custody, as well as the other subjects of the investigation and that all were from another state entirely, and nowhere near the vehicle or able to operate it, no search warrant was sought or received.

## LEGAL ARGUMENT

It is well established that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (footnote omitted)). Included in those exceptions is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).  Defendant maintains that the automobile exception is not applicable to this case, where defendant was inside the police station and walked into the station of his own volition, whereupon he was arrested and taken into custody.

Defendant maintains that the search of the van was not a "search incident to arrest" as Defendant was not with or near the van when arrested; rather, he was

inside the police station; further, there was no reason to believe the van contained evidence in connection with his arrest.

With regard to a "search incident to an arrest," prior to 2009, the Eighth Circuit generally concluded that if officers had probable cause to arrest a driver, the officers had the right to not only search the driver's person incident to the arrest, but also to search the passenger compartment of his vehicle. *United States v. Poggemiller*, 375 F.3d 686, 687 (8th Cir. 2004) ("Under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L. Ed. 2d 768 (1981)], when a police officer makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest."). Here, even prior to 2009, defendant Parks would not have been considered a "driver" as he had left his vehicle and entered a police station.

In 2009, however, the Supreme Court limited this broad exception to the warrant requirement when it issued its opinion in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L. Ed. 2d 485 (2009), and held that officers "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723 (emphasis added). *Gant* , therefore, may permit a warrantless search of a vehicle incident to a driver's arrest in only two circumstances; first,

arresting officers are permitted to search the passenger compartment of a vehicle when an arrestee "is within reaching distance of the passenger compartment at the time of the search." In this case, the search of the van occurred while defendant was inside a police department and his van was on a police department lot. Defense submits no argument could be made the first situation allowing a search under *Gant* is applicable under these facts.  The second application of *Gant* permits an officer to conduct a vehicle search incident to an arrest where "it is reasonable to believe the vehicle contains evidence of the offense of arrest."

In this case, officers state that prior to the search of the vehicle, they had searched two hotel rooms, seized condoms, gift cards, notebooks, and taken all of the women into physical custody.  There was no reason to believe there would be any evidence associated with the crime defendant was arrested for in the van.  The defense asserts that the officer will likely state one of the women may have stated that she smoked "weed" or marijuana and used heroin on the trip from Columbus, Ohio.  Notably, there were no narcotics seized that would support illicit drug use in either of the hotel rooms searched.  Additionally, while the defense anticipates the Government will state that for that purpose, a drug dog was used, and that the drug dog indicated on the van, the defense maintains that such a suggestion is pre-textual for an illegal search and notes that no illegal narcotics or paraphanalia were located in the van.

In *Gant*, the United States Supreme Court greatly circumscribed the long recognized search incident to arrest exception to the warrant requirement as it was defined by *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and applied to vehicle searches by *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). As that doctrine evolved and was interpreted by various courts of appeals across the country, it expanded the initial application of those occurrences where a warrant was not required.   It eventually allowed for the search of an arrestee's vehicle, even after the arrestee had been handcuffed and placed in the patrol cruiser. *See, e.g., United States v. Hrasky*, 453 F.3d 1099, 1102 (8th Cir. 2006).    The *Gant* Court, however, narrowed the circumstances in which a vehicle may be searched incident to arrest.

The present facts and circumstances illustrate why the Supreme Court narrowed the exceptions as to when a search warrant is necessary.  In the present case, defendant was in custody; the women involved in the allegations were in custody; many inconsistent statements had been made by the women and defendant's arrest afforded the Government an opportunity to continue their investigation and, if the Government believed that there was probable cause to believe the van, empty on a parking lot in front of a police department, not on a highway or road that may have required immediate towing for safety concerns, they were free to take the facts of their investigation to an impartial magistrate who

could have made a detached determination whether or not a search of the van was warranted.  Instead, they took a drug dog out to the van who allegedly indicated on the van, though no narcotics were in the van, and the police searched the van, without a warrant, and seized cell phones.

The present facts, where the defendant was not from Missouri, where the investigation was taking place, illustrate that the Government had an unfettered opportunity to seek an impartial determination of whether or not probable cause existed to search the van.  Armed with a few condoms, some women, each of whom gave inconsistent statements, including false names, and a very small time frame according to the Government's own evidence to have committed any offense, the Government instead searched the van without a warrant.

Defense notes that the Government's evidence is that the defendant and women checked into the Red Roof Inn at 6:34 am;  defense notes that the Government's evidence is that using illegally obtained evidence, "posts" on Backpage, some of which are attributable to woman Kayla Ott, one of the women subject to this investigation, began on December 3, 2015 at 1921 hours (or 7:21 PM (emphasis added)), with another advertisement posted at 19:28 (or 7:28 PM). A third advertisement was posted at 20:38 (or 8:38 PM).  The Government's position is that between a posting time of 7:21 p.m, and 21:05 (9:05 p.m), when law enforcement arrived and took the women into custody, solicitations were

posted, responded to, a place for meeting was set up, and that men responded to the

hotel rooms, more than one according to the Government to engage in sexual

activity with the women, arrived, engaged in prostitution, left, and repeated in less

than two (2) hours, though no money was found on the women, and no men were

found in the hotel rooms, or near the hotel rooms, notably, when they arrived at

9:05p.m., and that though it is indisputed defendant was not present and was not

present until he presented himself the next day at the station, that somehow, the

women gave the money earned for their services to defendant.

Further, the Government's own evidence turned over to the defendant

indicates that between the hours of 7:21 p.m. and 9:05 p.m., no one entered or

exited room 232.  The Government has not turned over relevant records in regards

to room 233.

While often the Government relies on evidence believed but collected after

the fact to bolster their position that probable cause existed for a search, in the

present case, the evidence collected from the illegal search suggests instead that

Defendant played no part in "posting" or prostituting any of the women who are

subject of the present case.

As the records from the telephones illegally obtained from the illegal search

are "fruit of the poisonous tree," defendant maintains that should this case go

forward, they should be suppressed; however, as defense notes that in fact, the

records clearly indicate the facts the Government hopes to prove are nearly

impossible to imagine, much less prove, Defendant respectfully requests that the

Motion be granted and the case be dismissed.


Respectfully submitted,



 /S/ Joseph M. Hogan 47008MO

Joseph M. Hogan

8008 Carondelet, Ste. 300

Clayton, MO 63105



Certificate of Service

I, Joseph M. Hogan, attorney for the defendant, hereby attest that a true and

accurate copy of the above styled Motion to Suppress Evidence, was electronically

delivered to the United Sates Attorney's Office, for the Eastern District of Missouri

on this 20th day of June, 2016.

_/S/_  Joseph M. Hogan