UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:15 CR 553 JAR JMB |
| KYLE MAURICE PARKS, | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S
MOTION TO SUPPRESS**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Howard J. Marcus, Assistant United States Attorney, and responds to the defendant's motion to suppress and respectfully asks that it be denied. In support, the government states as follows:

**Facts**

The Government will present testimony that on December 2, 2015, the Ohio Organized Crime Investigations Commission, Human, Trafficking Task Force was notified of a high risk missing juvenile, known as TS. TS had been a victim of human trafficking in Ohio and had resided in a group home. On December 3, 2015, TS's mother called law enforcement and told them that she had heard from TS and that TS told her that TS was heading down to Texas and then on to Florida with friends. At that time, the Ohio police officers made an exigent request that Sprint

1

"ping" (provide location information regarding) TS's phone in an effort to locate TS.

Sprint reported that that TS's phone was geographically located near the intersection of Interstate 70 and Zumbehl Road in St, Charles, Missouri.   The Columbus, Ohio Police subsequently contacted the St. Charles, Missouri Police Department and asked if they would go to that location to investigate.

On December 3, 2015, at approximately 9:05 pm, St. Charles Police responded to Interstate 70 and Zumbehl, where they observed a Red Roof Inn. The officers went to the parking lot and observed a 2003 Dodge van, bearing a temporary Ohio State Tag. Officers ran the plate and it was registered to Kyle Parks of Columbus, Ohio. St. Charles Police called the Columbus Police and advised them that they had located the van and were going to check the motel. Columbus Police told them that Kyle Parks was a "known Columbus, Ohio pimp and was involved in sex trafficking."

St. Charles officers contacted the front desk at the Red Roof Inn and determined that Parks had not reserved a room in his name, but room 233 and 232 had been rented by young women from Columbus, Ohio. Officers proceeded to Room 233 and conducted a "knock and talk.". Officers determined that room 233 was occupied by 19 year old RW and 17 year old TM. Officers proceeded to Room 232, and it was occupied by the missing juvenile TS, 24 year old KO, and 16 year old TB. All five of the female subjects advised that they had been brought to St. Charles by Kyle Parks. One of the victims told the police that Parks had just left with another minor female known as "S", just moments before the police came to their room. The victims consented to a search of the hotel rooms and police observed numerous used condoms and soiled linens, consistent with ongoing prostitution activity.

2

St. Charles Police notified the St. Louis County Police, Bureau of Special Investigations Unit because they were experienced in the investigation of human trafficking and prostitution crimes and were part of a larger Task Force. As a result, federally deputized task Force Officers (TFO) responded to meet with the victims and conduct further investigation. The TFOs determined that there were at least two other females involved. One was identified as a minor female named "S." "S" was also transported by Parks along with the other five subjects and was believed to be currently with Parks. A seventh subject known as "Amber" met with Parks after they all arrived in St. Charles. "Amber" was from St. Louis and drove a Honda to the hotel. The victims indicated that Parks appeared to know "Amber" and told them that he had been to St. Louis on prior occasions.

The TFOs interviewed the victims and were told that upon arrival at the Red Roof Inn, Parks told the victims that they needed to shower and get to work as he was going to "post" them on Backpage. The victims understood that he wanted them to prostitute and give him the money. Some agreed to do so, others did not. All of the victims advised the TFOs that Parks provided them with marijuana during the trip to St. Louis, and KO, a heroin addict, was getting her heroin from him. Police provided a safe place for all of the victims to reside, with the exception of "Amber" and "S" who were missing.

On December 4, 2015, at approximately 8:14 am, Parks drove to the St. Charles Police Department, parked his van and entered the Police station. Parks talked to a police officer and inquired about a possible female inmate's bond status, but was unable to provide much information about her other that she had come from Ohio. The officer also observed the defendant's van outside the station. The officer was aware of the incident at the Red Roof Inn and

3

realized that the van and the defendant were related to that incident. The defendant was directed to talk to the detectives.

St. Charles officers walked out to the parking lot and noted that there appeared to be a juvenile female in the defendant's van. Officer Yadlosky looked at the van and observed the juvenile subject known as "S" sleeping in the middle row, driver's side, in the defendant's van. Officer Yadlosky tapped on the window and woke "S" up. When the door opened up, he saw a bag of what appeared to be marijuana on the floor in the van by her and seized it.   The officer noted that the van's interior reeked of a strong, pervasive odor of marijuana. "S" appeared to be intoxicated or under the influence of a controlled substance. Officer Yadlosky also observed cellular phones laying on seats and floors in plain view. At that time, "S" was detained. Officer Yadlosky, having found marijuana, continued a cursory search of the vehicle and observed numerous gift cards, receipts, cellular phones and a container with more than 50 condoms in it. Officers then interviewed "S" who advised them that there was heroin and a firearm in a bag in the back of the car.

Based upon the finding of the suspected marijuana as well as the overwhelming odor of marijuana in the van, officers requested a drug detection canine to conduct a free air sniff the van. Officer Allen and his trained and certified dog, Nitro, arrived at the station. Nitro is certified to detect narcotic odors of marijuana, cocaine and amphetamines through the North American Police Canine Association. Nitro began a free air sniff of the van and alerted on the van. TFOs responded to the police parking lot and searched the van and found numerous receipts, gift cards, notes, 88 condoms, two Verizon flip phone, one ZTE phone and an Alcatel OneTouch phone that was subsequently tied to the defendant. At the conclusion of the search of the van, the van was

4

inventoried, pursuant to St. Louis County Police policy and subsequently towed.

On January 21 , 2016, TFO John Halliday applied for and received a search warrant from U.S. Magistrate Judge John M. Bodenhausen for the search of the four phone seized from the van. The phones were forensically searched by Christine Koenig, a qualified forensic examiner pursuant to the warrant.

**Analysis**

The defendant contends that the search of the van was not a lawful automobile search and that it was not a valid search incident to arrest. In support the defendant relies on Arizona v. Gant, 556 U.S. 332, 338 (2009) and contends that the search of the van exceeded the scope of a permissible search incident to arrest.   Defendant's reliance on Gant is misplaced.   Gant holds that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."   Gant,   556 U.S. at 351. However, Gant does not negate the other valid exceptions to the warrant requirement.   See United States v. Farnell, 701 F.3d 256, 264 n.6 (8th Cir. 2012) (citing United States v. Grooms, 602 F.3d 939, 942-43 (8th Cir. 2010)) (recognizing that warrantless searches need only be justified by one exception to the Fourth Amendment warrant requirement and rejecting Gant challenge where the search of defendant's vehicle was supported by probable cause pursuant to the automobile exception).

Here, a warrantless search of the vehicle was justified under other valid exceptions to the search warrant requirement.

The first applicable warrant exception is the automobile exception.   The warrantless

5

search of a vehicle is constitutional pursuant to the automobile exception if law enforcement has probable cause to believe the vehicle contains contraband or other evidence of a crime before the search begins. Chambers v. Maroney, 399 U.S. 42, 48 (1970); United States v. Farnell, 701 F.3d 256, 264 (8th Cir. 2012); United States v. Nolen, 536 F.3d 834, 839 (8th Cir. 2008). Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. Nolen, 536 F.3d at 839.

In Carroll v. United States, 267 U.S. 132, 15 (1925), the Supreme Court noted the practical challenges of obtaining a warrant for a vehicle that could be quickly moved out of the jurisdiction. In South Dakota v. Opperman, 248 U.S. 364, 367 (1976), the Court further noted that the expectation of privacy with respect to an automobile is significantly less than that relating to a home or office, an additional justification for the automobile exception. Therefore, so long as officers have probable cause to search an automobile for contraband or evidence of an illegal activity and the automobile is readily mobile, no warrant is required.

The fact that the van was parked on the St. Charles Police Department lot is not significant. The Supreme Court in California v. Carney, 471 U.S.386, 392-393, (1985) found that:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes-temporary or other-wise the two justifications for the vehicle exception come in to play. First the vehicle is obviously readily mobile by the turn of the ignition key, if not actually moving. Second there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling.

The Supreme Court, in Pennsylvania v. Labron, 518 U.S. 938, (1996), found that this was applicable to vehicles in a driveway, again based upon the mobility (with mobility

6

being the only exigency) of the vehicle as well as the reduced expectation of privacy in the vehicle.  See also United States v. Hollemann, 743 F.3d 1152, 1158 (8th Cir. 2014) (citing Carney, 471 U.S. at 392) (automobile exception applicable because hotel parking lot was not considered a place regularly used for residential purposes).

The Eighth Circuit has consistently upheld the "automobile exception", even in cases where the vehicle was parked and the subject was under arrest. In United States v. Perry, 925 F.2d 1077, 1080 (8th Cir. 1991), Perry, a bank robbery suspect had parked his car on a school parking lot and was arrested while walking, approximately 200 feet away from the vehicle. A sheriff's deputy looked into the vehicle, observed some suspicious items and used a "slim jim" to enter the car and searched and seized evidence. The vehicle was towed to the police station and later the interior was photographed. The Court found that the search was lawful as an automobile search based upon Carroll and its progeny.

Most recently this issue has been addressed by a Magistrate Court in United States v. Wilkins, No. 15-00232-01-CR-W-HFS, 2016 WL2616497 (W.D. Mo. April 8, 2016). In Wilkins, officers were watching an apartment and looking for Wilkins. The officers knew Wilkins was wanted on several warrants and that there was a "pick-up" order for Wilkins concerning a homicide case. Officer saw Wilkins walk to a vehicle and open the door. Officers confronted Wilkins and told him to get on the ground. Wilkins did not comply, pulled out what officers believed to be a weapon and threw it in the vehicle and slammed the door. Wilkins then ran back toward the door of the apartment where officers were finally able to subdue and arrest him. The Court, again relying on Carroll and its progeny, found it to be a valid automobile search. In doing so, the Court specifically found that a parked car was "readily mobile."

7

The vehicle in this case was in fact readily mobile. Parks drove it from Columbus, Ohio to St. Charles, Missouri and in fact drove it onto the parking lot of the St. Charles Police Department. Further, other subjects had access to the vehicle including the minor female, "S," who was actually found in the vehicle. The defendant's St. Louis associate, "Amber" was unaccounted for and may also have had access to the vehicle. Thus while the defendant was detained, the vehicle could have been readily driven off by another individual. Accordingly, the vehicle was readily capable of being used on the highways. Additionally, the police department parking lot was certainly not a place regularly used for residential purposes and was therefore not subject to a heightened expectation of privacy.

Based upon the collective knowledge of the investigators, they clearly had probable cause to search the vehicle. Probable cause exists, when given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place. United States v. Nolen, 536 F.3d 834, 839 (8th Cir. 2008).

Investigators were confronted with a 53 year old male from Columbus, Ohio who had purportedly transported six unrelated females, including three minors, in the 2003 Dodge Caravan with Ohio temporary tags to St. Charles. They also knew that the defendant had provided the victims with marijuana and that he attempted to and was successful in prostituting some of the victims. Based upon information received from the Columbus, Ohio, Police they knew Parks was a pimp and sex trafficker. When the defendant arrived at the police department in his van, inquiring about the custody of a minor victim, they had probable cause to search the van. The first thing they observed when they approached the van was a sleeping minor female. After tapping on the window she woke up and exited the car. At that point, marijuana was visible in plain view. The

8

pervasive smell of burnt marijuana combined with the discovery of the marijuana provided probable cause to do a complete search of the van based upon the automobile exception. United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011). The additional canine search was unnecessary but certainly bolstered the probable cause.

Second, the search of the vehicle and seizure of the phone was also justified under the plain view exception.   A Fourth Amendment search occurs when the Government invades an area in which a person entertains a legitimate or justifiable expectation of privacy. United States v. Reed, 733 F.2d 493, 500 (8th Cir. 1984) (citing Rakus v. Illinois, 439 U.S. 128, 143, & n.12 (1978) and Katz v. United States, 389 U.S. 347, 353 (1967)).This exception permits the lawful seizure of incriminating evidence that is in "plain view." United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004). Officers may seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the objects incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the item, United States v. Hughes, 940 F.3d 1125, 1126-27 (8th Cir. 1991).

The St. Charles officer clearly had a right to be present on the parking lot of his own police station where the van was parked.   It is hard to think of a place where a police officer has more of a right to be and where a defendant would have less of an expectation of privacy.   There is no reasonable expectation of privacy in parking lot areas exposed to public view. See United States v. Gooch, 499 F.3d 596 (6th Cir. 2007) (no reasonable expectation of privacy in lot on which defendant parked his car, even though it was in an area reserved by nightclub's valet parking service for paying customers); United States v. Edmonds, 611 F.2d 1386, 1388 (5th Cir. 1980) (no legitimate privacy expectation in the loading dock/parking lot area).

When the officer walked up to the van, parked on the police department parking lot where he had a right to be, he was aware that there was a missing victim and the sleeping "S" was clearly visible in plain view when he approached the van and looked in the window which was exposed to the public. When "S" exited the van, marijuana was also in plain view, allowing that seizure.

At the time that "S" exited the vehicle and the marijuana was seized, phones were also observed in plain view.   Given what the officers knew about the defendant and his conduct, the significance of the cell phone were readily apparent. The victims told the police that the defendant used a cell phone to post their advertisements on Backpages. Further as courts have noted there are also specifics as to how pimps and prostitutes use cell phones, see,United States v. Brinson, 772 F.3d 1314, 1319 (10th Cir.2014) ( within the context of expert testimony). Thus it can suggested or argued that cell phones are "tools of the trade."

Additionally, the odor of marijuana emanating from the vehicle provided probable cause to search.   The fact that a trained officer smells what they recognize to be the odor of marijuana alone can constitute probable cause to search. United States v. Smith, 789 F.3d 923, 929 (8th Cir. 2015) (finding that the smell of marijuana, along with the credible testimony by the officer, is sufficient to establish probable cause to search an automobile and its contents); see also: United States v. Caves, 890 F.2d 87, 90 (8th Cir.1989) (odor of an illegal drug can be highly probative in establishing probable cause for a search); United States v. Peltier, 217 F.3d 608, 610 (8th Cir.2000) (finding that an odor burnt marijuana coming from a vehicle gave an officer probable cause to search the vehicle for drugs); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (probable cause to search vehicle where officers see "item commonly used in manufacture of drugs" in plain view on the back seat of the vehicle).

10

Wherefore, because the search of the vehicle was made pursuant to multiple valid exceptions to the warrant requirement, the government respectfully requests that defendant's motion to suppress be denied.

> Respectfully submitted,
>
> RICHARD G. CALLAHAN
> United States Attorney
>
> /s/ Howard J, Marcus
> HOWARD J. MARCUS, 29756MO
> Assistant United States Attorney
> 111 S. 10th Street, Room 20.333
> St. Louis, Missouri 63102
> (314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system and mailed to:

> **Joseph M. Hogan**
> Joseph M. Hogan, Attorney at Law
> 8008 Carondelet
> Suite 300
> Clayton, MO 63105

> /s/ Howard J. Marcus
> HOWARD J. MARCUS, #29756MO