UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.   S1-4:15 CR 00553 JAR |
| KYLE MAURICE PARKS, | ) | |
| a/k/a "REECE," | ) | |
| a/k/a "DAD,"' | ) | |
| a/k/a "DADDY," | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**GOVERNMENT'S TRIAL BRIEF AND MOTIONS *IN LIMINE***

COMES NOW the United States of America, by and through its attorneys Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Howard J. Marcus and Jennifer A. Winfield, Assistant United States Attorneys for said District, and submits its trial brief, outlining the anticipated testimony of witnesses and potential evidentiary issues in the upcoming trial of the above-captioned matter.

**PROCEDURAL HISTORY**

Kyle Maurice Parks (hereafter referred to as the defendant) was arrested on a complaint by Federal Bureau of Investigation Task Force Officers.    A Grand Jury sitting in the Eastern District of Missouri initially issued a one count indictment against the defendant, charging Sex Trafficking of a Minor in violation of Title 18, United States Code, Section 1591(a)(1).    After a lengthy investigation, the Grand Jury returned a Superseding Indictment charging the defendant with Count One: Sex trafficking of TS, a minor, in violation of Title 18, United States Code, Section 1591(a)(1); Count Two: Transporting TS in interstate commerce with intent that she

engage in prostitution, in violation of Title 18, United States Code, Section 2421; Count Three: Attempted sex trafficking of LL, a minor, in violation of Title 18, United States Code, Section 1591(a)(1); Count Four: Transporting LL in interstate commerce with intent that she engage in prostitution, in violation of Title 18, United States Code, Section 2421; Count Five: Attempted Sex Trafficking of TM, a minor, in violation of Title 18, United States Code, Section 1591(a)(1); Count Six: Transporting TM in interstate commerce with intent that she engage in prostitution, in violation of Title 18, United States Code, Section 2421; Count Seven: Transporting KO in interstate commerce with the intent that she engage in prostitution, in violation of Title 18, United States Code, Section 2421, Count Eight: Transporting SL in interstate commerce with the intent that she engage in prostitution, in violation of Title 18, United States Code, Section 2421; and Count Nine: Transporting RW in interstate commerce with intent that she engage in prostitution, in violation of Title 18 United States Code, Section 2421.   All offenses were alleged to have occurred in the Eastern District of Missouri and elsewhere between December 1, 2015 and December 4, 2015.

## STATEMENT OF FACTS

The United States expects the evidence will show that the defendant, a 53- year old man, was a resident of Columbus, Ohio.   He set up a brothel, located in a business park at 4209/4211 Donlyn Court in Columbus, Ohio.   The club provided drugs, alcohol and commercial sex services with adult and minor females.   Patrons would engage in sex in exchange for money. The females would then be required or directed to turn over a portion of the proceeds to the defendant.   The defendant referred to Donlyn Court as the "Condo".   The defendant recruited females to work at and spend time at the club.

2

Between December 1, 2015 and December 4, 2015, the defendant decided to take an automobile trip which ultimately ended with his arrest in St. Charles, Missouri on December 4, 2015.   Prior to his trip, the defendant approached a series of minor females and adult females and suggested and induced them to travel with him.   The defendant told different women that they would be heading to different destinations.   Some were told the destination was Texas, others Florida and others told they were going to visit people in a nearby county.   As with the various destinations, the defendant told some of the females that they were going to dance, work as prostitutes, "make lots of money" or merely shop and "party".

The defendant met 4'9" 17-year-old TS when she was walking down a street in Columbus.   He offered TS a ride and told her she could make some money and "have everything she dreamed of".   TS was a high risk runaway who had been reported missing from a juvenile facility.   The defendant took TS to the Condo to spend the night.   Present at the Condo was 15-year-old SL as well as girls.

On December 2, 2015, the defendant gathered up a total of six female victims.   This included adults, KO and RW and the minors.   The minor females included TS, SL, LL and TM. The defendant instructed the victims to bring "outfits" and they left Columbus at approximately 4:00 pm on December 2, 2015.

The defendant drove his victims in a 2003, light blue, Dodge Minivan with Ohio, temporary tags.   During the drive, the defendant provided most of his victims with marijuana to smoke during the drive.   The made a few stops along the way, for food and to allow the defendant to rest.   As the defendant drove southwest, the victims fell asleep.

On December 3, 2015, at approximately 6:00 am, the defendant arrived in St. Charles,

3

Missouri and pulled into the parking lot at the Red Roof Inn, located at 1020 Zumbehl Road, adjacent to Zumbehl and Interstate 70.   The defendant instructed the two adult females to obtain two rooms at the Red Roof Inn.   The defendant and some of his victims can be observed together in the hotel lobby on the hotel surveillance cameras.

The victims were directed to Rooms 232 and 233 and the defendant told them to get some sleep.   The defendant slept in Room 232 with three of the girls.   Approximately two hours later, the defendant woke the victims up and told them that they needed to "shower, get dressed and post up".   They were advised that the defendant was going to place advertisements for the victims on backpage.com, an online website where prostitution and adult services were offered. The defendant told the victims were that they were to commit acts of prostitution and "Get me my money".   Shortly thereafter, a seventh female arrived at the hotel.   The Ohio victims identified the seventh woman as a heroin addicted adult known only as "Amber".

Between the morning of December 3, 2015, and the evening of December 3, 2015, several of the victims took calls resulting from the backpage.com posts.   Some of these calls resulted in some of the victims meeting with and engaging in acts of prostitution with the callers. After the victims engaged in prostitution, they gave the proceeds to the defendant who kept most of the money.   The Defendant might provide the victim with a small amount of money.

Sometime, during December 3, 2015, TS was reported missing from her juvenile facility. Columbus police attempted to locate TS by sending a signal to, or "pinging" her cell phone.   As a result, Ohio police determined that her phone was located at the intersection of Zumbehl Road and Interstate 70.

On December 3, 2015, Columbus police requested that St. Charles, Missouri Police

dispatch cars to Zumbehl and Interstate 70, which is the location of the Red Roof Inn.   Officers arrived at the Red Roof Inn and observed the defendant's van with the temporary tags.   They ran the tag and determined that it was registered to the defendant.   St. Charles Police contacted the Ohio officers and advised them of the presence of the defendant's van.   Columbus officers advised them that the defendant was a known trafficker and probably was with TS.   St. Charles officers determined that Rooms 232 and 233 were registered to women from Columbus, Ohio.   Officers proceeded to those rooms and conducted "knock and talks" and the occupants of the rooms agreed to talk to the officers and allow them into their rooms.

In the course of the "knock and talk", officers located most of the victims, including TS.   Officers observed soiled linens and used and unopened condoms in the hotel rooms.   While the officers were at the rooms, the defendant and 15- year old SL left the area in the van.

On December 4, 2016, the defendant drove his van to the St. Charles Police station and entered the front door.   He advised officers that he was there to bond out a friend.   The defendant told officers that he had brought her to St. Louis and only knew her first name.   The officers had been briefed on the December 3, 2015 incident at the Red Roof Inn as well as the role of the defendant and his van.   They also knew that there were two victims that had not been accounted for.   After talking to the defendant, officers went to the parking lot and observed the van.   The looked through the van window and observed what appeared to be hair sticking out from under a blanket on a van seat.   Officers repeatedly knocked and it appeared as if someone was lying under the blanket.   That person stirred but didn't respond or wake up.   At that point officers opened the door and immediately smelled an overwhelming odor of burnt marijuana.   They woke up the occupant of the van, subsequently identified as SL.   At her feet they

5

recovered a bag of marijuana.

The van was searched and officers found several cell phones, gift cards and a basket with more than 80 unopened condoms.

On December 5, 2016, an Ohio officer appeared before a Franklin County, Ohio, judge and applied for and obtained a search warrant for the "Condo", which is the property described as 4209 and 4211 Donlyn Court, Columbus, Ohio.   During the course of the search, officers found several soiled beds, condoms, syringes, girl's backpacks and clothing, a commercial-cash bar set up, and a large box containing numerous bottles of what purported to be "herbal male enhancement" supplements.   Officers also found mail addressed to a variety of female subjects as well as the defendant's business card which read "XXXREC" which advertised nude dancers, massages, pedicures and manicures.   All of the items observed, photographed and seized from the "Condo" were consistent with commercial prostitution.

After the arrests and searches, St. Louis detectives and agents began to conduct an in depth investigation and determined that the defendant, while in St. Louis, was tied to advertisements for prostitution services while in St. Louis, on December 3, 2015 and while in Ohio, prior to the trip to St. Louis.   Many of the advertisements were tied to his cell phone, (614) 745-5980 and email addresses, xxxrec53@gmail.com.   and maurpar57@gmail.com.

The defendant was ordered detained pending trial by U.S.  Magistrate Judge, Shirley Mensah.   The defendant was subsequently housed at the Saint Genevieve County Jail.   While in the jail, defendant utilized a recorded phone line made numerous phone calls to friends and relatives in Columbus, Ohio.   During these calls, he made numerous admissions concerning his criminal conduct.   These statements included comments about opening up a "little escort

service" in St. Louis; having "19 girls working for me", stating, "I'm not saying I wasn't

pimping, I was…"; and directing friends and family to look for and attempt to intimidate and

threaten the victims into not testifying.

## LEGAL ANALYSIS

**A. Interstate Transportation with Intent to Engage in Prostitution
(Counts Two, Four, and Six through Nine)**

  i.  <u>Statute</u>

Title 18, United States Code, Section 2421(a) provides that:

> Whoever knowingly transports any individual in interstate
> commerce, or in any Territory or Possession of the United States,
> with intent that such individual engage in prostitution …shall be
> fined under this title or imprisoned not more than 10 years or both.

18 U.S.C. § 2421(a).

  ii.  <u>Elements</u>

To sustain its burden of proof, the United States must prove:

> **<u>First</u>**: the Defendant knowingly transported an individual in
> interstate commerce;  and

> **<u>Second</u>**: at the time of the transportation, Defendant intended that
> the victim would engage in prostitution or other unlawful sexual
> activity.

<u>See</u> ,18 U.S.C. § 2421(a).

In meeting its burden, the United States need not show that prostitution actually occurred

once state lines were crossed.   The United States need only show that prior to crossing state

lines, the defendant "possessed the requisite intent for conviction – <u>i.e.</u>, the calculated means of

effectuating" the prostitution of the victims.   United States v. Cole, 262 F.3d 704, 708-709 (8th Cir. 2001).

  In the present case, the Defendant drove six victims from Columbus, Ohio, to St. Charles, Missouri, with the intent that they engage in prostitution.   While some of the victims engaged in prostitution, the other victims were not in St. Charles long enough to actually go on prostitution calls.   All the United States must only prove that "[T]he illicit behavior must be "one of the purposes motivating…the interstate transportation," but need not be the dominant purpose." Id. at 708.

**B.** **Sex Trafficking of a Minor (Count One)**

   i.  Statute

Title 18, United States Code, Sections 1591(a)(1) and 1594.

Section 1591(a)(1) provides:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

As to knowledge of a minor's age, Section 1591(c) further provides:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the

8

person had not attained the age of 18 years.

See, 18, U.S.C. § 1591(a)(1).

ii.      Elements

To sustain its burden of proof, the United States must establish the following:

> **First:** the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means any individual; and

> **Second:** that the defendant did so knowing or in reckless disregard of the fact that the individual had not attained the age of 18 years and would be caused to engage in a commercial sex act; and

> **Third**: that the defendant's acts were in or affected interstate or foreign commerce.

See, e.g., United States v. Jungers, 702 F.3d 1066, 1069 (8th Cir. 2013); United States v Garcia-Gonzalez, 714 F.3d 306, 312 (5th Cir. 2013); United States v. Chappell, 665 F.3d 1012, 1014 (8th Cir. 2012).

Title 18, United States Code, Section 1591(a) was passed by Congress as part of the Trafficking Victims Protection Act of 2000("TVPA").   See, Pub. L. No. 106-386, 114 Stat. 1464 (2000).   "The TVPA criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain."   United States v. Evans, 476 F.3d 1176, 1179 (11th Cir. 2007).   In passing the Act, "Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today."   Evans, 476 F.3d at 1179 (discussing legislative history of Section 1591).

**i.      Recruit, Harbor, Transport, Provide or Obtain**

In considering whether a defendant knowingly recruited, enticed, harbored, transported,

9

provided, or obtained a person, the jury may use the ordinary, everyday definitions of those terms.   See, Smith v. United States, 508 U.S. 233, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning").   Recruit means to seek the services of or to enroll in support of oneself or others.   To entice means to attract or lure using hope or desire.   To harbor a person means to give or afford shelter or refuge to that person.   To transport means to transfer or convey from one place to another.   Provide means to supply or make available.   To obtain means to gain, acquire or attain.   See, The American Heritage Dictionary of the English Language, New College Edition (1976).

In the present case, the evidence establishes that defendant Parks recruited, enticed, harbored, transported, or obtained several minors.   He found them on the streets of Columbus, Ohio and drove them from Columbus, Ohio to St. Charles, Missouri, within the Eastern District of Missouri and for the purposes of prostitution.

### ii.    Reasonable Opportunity To Observe the Victim

In determining whether the defendant knew or acted in reckless disregard of the fact that a victim had not attained the age of 18, a defendant has a reasonable opportunity to observe the victim if the defendant had an in-person, face-to-face interaction, with the victim.   See, United States v. Booker, 447 Fed. Appx. 726, 727 (7th Cir. 2011); United States v. Robinson, 702 F. 3d 22, 35 (2nd Cir. 2012).

In the present case, the evidence shows that defendant had a reasonable opportunity to observe all the victims, many, who physically appeared to be younger than their true age.   The defendant in jail phone conversations with friends acknowledged that several of his victims were from a Pomegranate, which is a facility for those 17 and under.   The defendant also had a

10

significant opportunity to physically observe the other juveniles and engage them in conversations.   This provided the defendant, a 53-year old man, a reasonable opportunity to asses and determine their true ages.

### iii.   Commercial Sex Act

The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.   The thing of value may be money or any other tangible or intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act.    18 U.S.C. § 1591(a)(1) and (c)(1).   In the present case, all victims made money from "johns" as a result of their prostitution activities and the money was ultimately given to defendant, he then provided them with a portion of their proceeds.

### iv.   Interstate Commerce

Courts have held that the internet and cell phones are a means or facilities of interstate commerce.   See, e.g., United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009) ("it is beyond debate that the Internet and email are facilities or means of interstate commerce"); United States v. Giordano, 442 F.3d 30, 39-40 (2nd Cir. 2006) (cell phones are a facility or means of interstate commerce.   In United States v. Corum, 362 F.3d 489, 493 (8th Cir. 2004), the Court of Appeals for the Eight Circuit held that "it is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce.   See also, United States v. Evans, 476 F.3d 1176 (11th Cir. 2007) (finding that the interstate commerce element was met in a Section 1591(a) case where no prostitutes crossed state lines but hotels, phones, and condoms manufactured out of state were involved and the United States does not need to prove that the defendant knew his

11

actions were in or affecting interstate commerce); United States v. Myers, 430 Fed. Appx. 812, 816 (11th Cir. 2011) ("knowingly" does not modify the interstate commerce prong).

In the present case, the defendant used cell phones to set up "dates" with "johns" for the victims.   The defendant also placed prostitution advertisements on the internet through www.backpage.com.   Furthermore, defendant transported the victims across state lines between Ohio and Missouri for purposes of prostitution.

### v.    Failed Attempt at Prostitution Is Not a Defense

It is no defense under 18 U.S.C. § 1591 that the prostitution which was intended by defendant was not accomplished.    See, e.g., United States v. Brooks, 610 F.3d 1186, 1197, n.4 (9th Cir. 2010) (upholding conviction for sex trafficking pursuant to 18 U.S.C. §1591(a) where one of the minor victims recruited to engage in prostitution ultimately never engaged in a commercial sex act.

### C.    Attempted Sex Trafficking of a Minor (Counts Three and Five)

The law concerning Counts Three and Five, Attempted Sex Trafficking of a minor is essentially the same as Count One.   The only added difference is that the defendant must have taken a substantial step towards the completion of the crime.   An attempt requires the intent to commit the predicate offense and a "substantial step towards the commission of the offense United States v Larive, 794 F.3d 1016, 1019, (8th Cir. 2015).

### D.    Witness and Evidence

### 1.    Expert Witnesses

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue.   Fed. R. Evid. 702; United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003), citing, United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999).

During its case-in-chief, the United States anticipates calling the following expert witnesses with respect to the following subjects:

a.   Pimping and Prostitution:

The government expects Detective Derek Stigerts to testify at trial in order to aid the jury in understanding the *modus operandi* of pimps, including the recruitment of prostitutes, methods of establishing power and control over prostitutes, the relationship between a pimp and his prostitutes, and the nature of the prostitution "game."   Detective Stigerts will also testify about the vocabulary unique to prostitution.   The testimony of Detective Stigerts is relevant given that "[b]y and large, the relationship between prostitutes and pimps is not the subject of common knowledge."   United States v. Taylor, 239 F.3d 994, 998 (9th Cir. 2001), citing, see, general note, "Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution," 103 Yale L.J.   791, 793–96 (1993) (citing research on the abuse of prostitutes by pimps and noting that the full extent of such abuse remains unknown); Ann M.   Coughlin, "Of White Slaves and Domestic Hostages," 1 Buff. Crim. L. Rev. 108, 120–21, 124–25 (1997) (discussing how people puzzle over why a prostitute does not leave an abusive relationship with a pimp).

Such expert testimony is admissible at trial to assist the jury in understanding the evidence and to determine a fact in issue.   See, Brooks, 610 F.3d at 1195-1196; see also, Taylor, 239 F.3d at 998, United States v. Cotton, 22 F.3d 182, 185 (8th Cir. 1994) (finding that "an individual can qualify as an expert by possessing knowledge gained from practical

experience").   In <u>Brooks</u>, the court admitted testimony of a police detective with approximately eight years of training and experience, including two and a half years as a vice detective who had conducted multiple interviews of prostitutes and pimps and been involved in more than twenty child prostitution investigations.   Detective Stigerts has similar qualifications.

2.   <u>Lay Testimony</u>

Several of the government's witnesses will testify that the defendant used coded language and terms commonly used in the prostitution business.   These witnesses include the girls that worked for the defendant as prostitutes.   Such lay opinion testimony is admissible if the witness is sufficiently familiar with the defendant.   <u>See</u>, <u>United States v. Holmes</u>, 229 F.3d 782, 788-89 (9th Cir. 2000)(lay witness who had met defendant 6 times qualified to identify defendant from photograph); <u>United States v. Estrada</u>, 39 F.3d 772 (7th Cir. 1994)(informant's testimony as to his understanding of meaning of recorded conversations between himself and defendant in drug case); <u>United States v. Flores</u>, 63 F.3d 1342 (5th Cir. 1995)(lay witness may testify about conversations consisting of unfinished sentences and punctuated with ambiguous references to events that are clear only to participants); <u>Batsell v. United States</u>, 217 F2d 257, 262 (8th Cir. 1954)(where witness was allowed to testify regarding the definition of common term used by the pimp/defendant); <u>Wiley v. United States</u>, 257 F.2d 900, 908 (8th Cir. 1958)(where witness was allowed to testify regarding the definition of common term used by the pimp/defendant).

3.   <u>Computer Forensics</u>

As disclosed in its prior pleadings, the government will call Christine Koenig, a

Forensic Technician who examined and extracted data from the defendant's phone.

**EXHIBITS**

The United States intends to introduce multiple exhibits into evidence.    The exhibits consist of photographs that were posted to online prostitution-related websites, photographs of locations and evidence relevant to this case; digital evidence taken from the prostitution-related website www.backpage.com account; cell phone records corroborating the defendant's purchase of the advertisements on the prostitution related websites, the contents of the defendant's cell phone and various evidence corroborating the testimony of the witnesses in the case.

An exhibit list will be filed prior to the start of trial.   To the greatest extent possible, the government intends to use presentation software when presenting its case.   A binder of the original documents will be available for the witnesses and also for the jury to take into the jury room.


**EVIDENTIARY ISSUES**

1.      Age of the Victims

Three of the charged offenses (Counts One, Three and Five) include elements requiring proof that the victims were under the age of 18 at the time the offenses were committed and that the defendant knew this fact.   The government intends to prove the age through testimony from the victims, as well as through a certified birth certificate.   See, Hilliard v. United States, 121 F.2d 992, 996 (4th Cir. 1941)(to establish victim's age the government offered a certified copy of the birth certificate); United States v. Austrew, D.C.Md. 1962, 202 F.Supp. 816,

affirmed, 317 F.2d 926 (birth certificate of girl, who was allegedly transported in interstate commerce for immoral purposes, was admissible to show that she was under eighteen, though girl's first and middle names were transposed on birth certificate, where it was properly sealed and certified).

    2.    <u>Photographs</u>

The government intends to introduce photographs during the trial.   Under Federal Rule of Evidence 90l(a), testimony by a witness that a photograph fairly and accurately depicts that scene at some relevant time is a sufficient basis for admission of the photograph.   <u>See</u> <u>United States v. Brannon</u>, 616 F.2d 413, 416 (9th Cir.), <u>cert. denied</u>, 447 U.S. 908 (1980); <u>Louis Vuitton S.A. v. Spencer Handbags Corp.</u>, 765 F.2d 966, 973-74 (2nd Cir. 1985) (and cases cited therein).

    3.    <u>Prior Inconsistent Statements</u>

    a.   <u>Substantive Evidence</u>

Some witnesses testified before the Grand Jury.   In the event that a witness provides testimony inconsistent with the testimony before the Grand Jury, the government intends to introduce the prior testimony as substantive evidence.   Such prior testimony is not hearsay pursuant to Rule 801(d)(1)(A) which provides that a statement is not hearsay if :

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

The witness that testified before the Grand Jury testified under oath.   If they testify inconsistently at trial, their prior testimony should be admitted as substantive evidence, not just for impeachment.   <u>United States v. Russell</u>, 712 F.2d 1256, 1258 (8th Cir. 1983).   Also,

inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence or changes of position. Id.   Additionally, vague or incomplete responses can trigger the use of prior inconsistent statements.    See, United States. v. Distler, 671 F.2d 954 (6th Cir. 1981).   Contrived memory loss can also trigger the use of prior inconsistent statements.   United States v. Knox, 124 F.3d 1360, 1364 (10th Cir. 1997).

      b.    Impeachment Evidence

The government anticipates that there may be witnesses who have given prior inconsistent statements.   Any prior statements not made under oath will be admissible only as impeachment evidence, and the Court should give a limiting instruction to that effect.

      4.    Use of Nicknames

The victims in this case know the defendant by his given name, as well as by his nicknames, including "Reece", "Dad" and "Daddy".   The government intends to elicit this information from any witness who might only know the defendant by one of his nicknames, and cannot identify or refer to him by his proper name.

      5.    Reciprocal Discovery

To date, the government has provided a large amount of discovery to the defense.   The government has requested reciprocal discovery, and has not received any discovery from the defendant.   Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the Court should exclude it pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

      6.    Presentation of Witnesses

The United States intends to present the evidence in this case in a generally sequential

fashion.   However, it may become necessary due to scheduling issues to call a witness out of order.

      7.   <u>Outgoing Jail Calls</u>

The government intends to present a substantial amount of evidence derived from the defendant's recorded out going phone calls made from the St. Genevieve County Jail.   The Saint Genevieve Sheriff's Department has a policy that all out going inmate call are recorded in the ordinary course of business, with the exception of calls to attorneys who have entered their appearance on behalf of the defendants.   There is an inmate guide reflecting that policy which is posted next to the inmate phone.   Section 3.16 of that manual provides for policies relating to the inmate of telephones.   Subsection D. states in bold type, "All call are recorded & subject to monitoring, this includes the visitation telephones".   Further at the beginning of all outgoing inmate calls, the following warning is provided to the inmate and the recipient of his calls, "This call is subject to recording and monitoring".

The defendant engaged in a large volume of outgoing calls with friends, associates, family member and former prostitutes where he discussed witness intimidation, his current criminal conduct, and past acts of pimping, promoting prostitution and human trafficking. During these calls the defendant often states he should be careful about what he says as he knows that his calls are being recorded.

The calls are admissible as they may be intercepted without a warrant if one of the parties gives prior consent.   18, U.S.C. Section 2511(2)(c).   Since inmates are warned, the rules are posted adjacent to the inmate phone, and a warning is given at the beginning of each call, the inmate has impliedly consented to the monitoring.   <u>United States v. Lucas</u>, 499 F.3d 769, 780

(8th Cir. 2007), <u>United States v. Horr</u>, 963 F.2d 1124, 1126 (8th Cir. 1992).

       8.    <u>Impossibility</u>

      The defendant should also be barred from raising an impossibility defense at any stage of the trial.   The Eighth Circuit has long held that "factual impossibility" is not a recognizable defense to an attempt crime.   Eighth Circuit Model Criminal Jury Instructions 8.01 (2007) citing favorably <u>United States v. Frazier</u>, 560 F.2d 884, 888 (8th Cir. 1977) (recognizing that the would-be thief who attempts to pick an empty pocket has still committed an attempt crime). Likewise, here it matters not whether a victim had completed a sex "date" that the defendant had set-up for her.   What matters was the defendant's intent.   As stated above, the Eighth Circuit's definition of attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a "substantial step" toward commission of the intended offense which strongly corroborates the actor's criminal intent.   Thus, a defense of factual impossibility is foreclosed to the defendant.

      At the same time, the defendant should be barred from claiming that his attempt to recruit and entice a minor for a commercial sex act was legally impossible.    In citing <u>Frazier</u>, the committee notes from Eight Circuit Model Criminal Jury Instructions 8.01 (2007) clearly explain that the defense of legal impossibly has such a narrow application that it would only apply in an instance where completion of the act would not constitute a crime.

> Legal impossibility refers to those situations in which the intended acts, even if successfully carried out, would not amount to a crime. Thus, attempt is not unlawful where success is not a crime, and this is true even though the defendant believes his scheme to be criminal.

<u>Frazier</u>, <u>supra</u>.   Clearly, commercial sex with a minor prostitute is illegal.   Therefore, the

defendant should be barred from making such arguments at any stage of the trial.

## WITNESS EXCLUSION AND CASE AGENT DESIGNATION

The government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615.   The government will further move that Special Agent Nikki Badolato and Task Force Officer Jared Queen be designated as the case agents and be exempt from the exclusion order, pursuant to Fed. R. Evid. 615.

    1.   <u>Minor Victims Prior Acts of Prostitution</u>

The defendant transported, trafficked or attempted to traffic four minor and three adult victims as charged in the indictment.   The government seeks to exclude any cross examination of and evidence presented concerning prior acts of prostitution that may have been committed by the juvenile victims.   Since four of the victims are juveniles, they could not legally consent to any prior acts of prostitution and it is immaterial.   <u>United States v. Campbell</u>, 764 F.3d 880, 888, (8th Cir. 2014).   Further this type of evidence is excluded under Fed. R. Evid. 412 (a) (1), which bars evidence of a victim's sexual behavior.   Not only should their prostitution history, if any be barred from cross examination, so should their personal sexual history.   As consent is not at issue, any such evidence or examination should be barred.

## CONCLUSION

The foregoing is a summary of points the government anticipates may arise at trial.

Should any legal issues arise that have not been covered in this trial brief, the government

respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted,
RICHARD G.   CALLAHAN
United States Attorney


*/s/ Howard Marcus*
HOWARD J.   MARCUS, 29756MO
Assistant United States Attorney

*Jennifer Winfield*
JENNIFER WINFIELD, 53350MO
Assistant United States Attorney
111 South 10th Street, Rm.   20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2017, the foregoing was filed electronically with the
Clerk of the Court to be served by operation of the Court's electronic filing system upon Joseph
Hogan, attorney for defendant Kyle Parks.


*/s/ Howard Marcus*
HOWARD J.   MARCUS, 29756MO
Assistant United States Attorney

*/s/ Jennifer Winfield*
JENNIFER WINFIELD, 53350MO
Assistant United States Attorney
111 South 10th Street, Rm.   20.333
St. Louis, Missouri 63102
(314) 539-2200